| | | | |
|---|---|---|---|
| | AUSA: | Jeremiah Smith | Telephone: (313) 226-9100 |
| AO 91 (Rev. 11/11) Criminal Complaint | Special Agent: | Samantha Rasmussen | Telephone: (313) 202-3400 |

# UNITED STATES DISTRICT COURT
for the

## Eastern District of Michigan

| | | |
|---|---|---|
| United States of America | | Case: 2:26-mj-30271 |
| v. | | Assigned To : Unassigned |
| Dionta Allen | | Assign. Date : 05/12/2026 |
| | Case No. | Description: USA v. SEALED |

### CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ February 8, 2026 _____ in the county of _____ Wayne _____ in the _____ Eastern _____ District of _____ Michigan _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possessing methamphetamine with the intent to distribute. |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_Complainant's signature_

Samantha Brockmiller-Rasmussen, Special Agent
_Printed name and title_

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: _____ May 14, 2026 _____

_Judge's signature_

City and state: Detroit, MI

Hon. Kimberly G. Altman, U.S. Magistrate Judge
_Printed name and title_

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

<u>AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT</u>

I, Samantha Brockmiller-Rasmussen, being first duly sworn, hereby state:

## **INTRODUCTION**

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), assigned to Group IV. I have worked as a Special Agent with ATF since December of 2023.  I completed the Federal Law Enforcement Training Center Criminal Investigator Training Program and the ATF Special Agent Basic Training Program in Glynco, Georgia. Prior to becoming a Special Agent with ATF, I was an Intelligence Analyst with the Oakland County Sheriff's Office for approximately one year. I obtained a Master of Science degree in Criminology and a Bachelor of Science degree majoring in Criminology and Criminal Justice and Psychology from Florida State University.

2.      As an ATF Special Agent, I have participated in numerous criminal investigations, including investigations involving drug trafficking. I have experience utilizing a variety of techniques and resources to investigate the methods of drug traffickers and their distribution networks.

3.      I make this affidavit based on my participation in this investigation, reports from other law enforcement agents, communications with others who have

personal knowledge of the events and circumstances described herein, and information gained through my training and experience. The information in this affidavit is for the limited purpose of establishing probable cause and does not contain all details or all facts relating to this investigation.

4.     ATF is currently conducting a criminal investigation concerning Dionta ALLEN (DOB: XX/XX/1997), for violations of 21 U.S.C. § 841(a)(1), for possessing methamphetamine with the intent to distribute.

**PROBABLE CAUSE**

5.     On February 8, 2026, at approximately 1:15 PM, a Lenawee County Sheriff's Office (LCSO) deputy conducted a traffic stop in Raisin Township, Michigan, on a vehicle occupied by two individuals for window tint violations and failure to maintain insurance (LCSO Report #260002466). The driver was identified as Dionta ALLEN (DOB: XX/XX/1997), and the passenger as suspected co-conspirator Ladainion Gilmer (DOB: XX/XX/2004). ALLEN was arrested on an outstanding Failure to Appear warrant related to a prior traffic offense. Gilmer, who did not possess a valid driver's license, was released at the scene.

6.     While conducting an inventory search of the vehicle prior to towing, deputies observed a crystal-like residue inside the glove box. Based on this observation, deputies established probable cause and conducted a search of the vehicle. During the search, deputies located three baggies concealed behind the

glove box, each containing a crystal-like substance consistent with methamphetamine. The total gross weight of the suspected methamphetamine was approximately 87.5 grams.

7.      On February 17, 2026, the Lenawee County Sheriff's Office submitted the recovered substance to the Michigan State Police Laboratory for analysis. The laboratory subsequently confirmed that the substance tested positive for methamphetamine.

8.      I reviewed recorded jail calls made by ALLEN on February 8, 2026, while in custody at the Lenawee County Jail. During his first call, ALLEN was explaining his predicament. ALLEN said, "Every time I get caught up—I mean, every time I uhh—I'm talkin bout caught up—every time they always motherfucking try to arrest you or pull you over they wanna take your phone," and, "I guess they found something in the process but I'm not charged with that right now or whatever but Ion know. They prolly gonna try to charge me later." During another call, ALLEN discussed posting bail and said, "Cause I'm tryna get out of here right now before they find something else and act crazy about it."  Based on my training and experience, I believe these statements indicate ALLEN had knowledge of the methamphetamine recovered from the vehicle.

9.      Pursuant to a search warrant authorized by the Honorable Todd M. Morgan of the 2A District Court in Adrian, Michigan, I reviewed a forensic

extraction of ALLEN's cellular phone seized at the time of his arrest. During my review, I observed evidence consistent with ALLEN's involvement in the acquisition of quantities of methamphetamine greater than those typically associated with personal use. Representative examples of this evidence are summarized below:

    a. On January 27, 2026, ALLEN messaged (XXX) XXX-0211 and said, "See if yo peoples got some 🧊 [ice emoji] in for sale… I need 2 Bo's." Based on my training, experience, and the consultation of senior agents, I know "ice" is a slang term for methamphetamine and "bo[w]" typically refers to a pound of a controlled substance. I believe ALLEN's message was an attempt to purchase approximately two pounds of methamphetamine.

    b. On January 27, 2026, at approximately 6:05PM, ALLEN messaged (XXX) XXX-3185 and said, "Yo purping ass still got that $120? I'm finna go through nana peoples she down here finna grab her own." At 7:21PM, (XXX) XXX-6474, a phone number with a contact name of "Nana", messaged ALLEN and said, "Bout to pull up." ALLEN directed her to the side door for her to gain entry. At 7:38PM, ALLEN messaged (XXX) XXX-

9425 and said, "Wyo? Roll up with me I'm tapped out rn I just grabbed some 🎲." Based on my training, experience, and the timing and context of this and previous conversations between ALLEN and these individuals, I believe ALLEN was referencing the purchase of methamphetamine.

10.    I also observed evidence consistent with ALLEN facilitating drug distribution, including suspected crack cocaine and methamphetamine transactions:

    a.  On January 31, 2026, ALLEN messaged (XXX) XXX-XX36 [Contact Name: "Jp"] and said, "I got a $40 sale for you, you got some hard?" Jp said he did. At the same time, ALLEN was messaging (XXX) XXX-9300 and asked for her address which was provided as 2XXXX Kingston Cir, Flat Rock, MI. ALLEN sent the same address to "Jp". ALLEN messaged (XXX) XXX-9300 and said, "Ok I sent my brother he pulling up soon I'm with my kid right now I'll bring you the 🎲 when I'm done he already had the hard on him and was closer to you than I was." Based on my training and experience, I know "hard" is a slang term for crack cocaine. I believe ALLEN facilitated a narcotics transaction between Jp and another individual.

b. On February 4, 2026, ALLEN explained his intent to distribute drugs by messaging a third party, "we finna shoot this sale but we gotta pull up there first." Later, ALLEN sent a message to (XXX) XXX-9300 referencing payment. Subsequent messages with the same individual indicated completion of a meeting consistent with a drug transaction. Based on my training and experience, I believe these communications are consistent with the distribution of methamphetamine.

c. Additionally, on February 6, 2026, ALLEN used the Safari internet browser to search the term "methamphetamemes." Based on my training and experience, and in conjunction with the other evidence described above, I believe this search is indicative of ALLEN's knowing possession and awareness of methamphetamine.

## CONCLUSION

11. Based on the totality of the facts set forth above, including the recovery of approximately 87.5 grams of methamphetamine from the vehicle driven by ALLEN, the laboratory confirmation that the substance was methamphetamine, ALLEN's incriminating jail call statements, and the evidence obtained from the forensic extraction of his cellular phone

reflecting drug-related communications, transactions, and searches, I believe

probable cause exists that on February 8, 2026, in the Eastern District of

Michigan, Dionta ALLEN, did knowingly and intentionally possess

methamphetamine with an intent to distribute in violation of 21 U.S.C. §

841(a)(1).


_____
Samantha Brockmiller-Rasmussen, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to before me and signed in my presence
And/or by reliable electronic means

_____
Hon. Kimberly G. Altman
United States Magistrate Judge

Dated: _____May 14, 2026_____